[No. D009129. Fourth Dist., Div. One. Jan. 29, 1990.]

VERUSHKA JOHNSON, a Minor, etc., Plaintiff and Appellant, v. SAN DIEGO UNIFIED SCHOOL DISTRICT, Defendant and Respondent.

**COUNSEL**

Biljana Kovacevic for Plaintiff and Appellant.

McInnis, Fitzgerald, Rees, Sharkey & McIntyre and Steven J. Cologne for Defendant and Respondent.

**OPINION**

**WORK, J.**—Verushka Johnson appeals a judgment dismissing her personal injury action against the San Diego Unified School District (District) entered after the District's motion for summary judgment was granted because Johnson did not comply with the filing provisions of the California Tort Claims Act (Act) (Gov. Code, § 900 et seq.). Johnson contends she substantially complied with the claim procedures by filing her claim with the State Board of Control and stating the place of the accident, naming the District as the agency causing the injury and giving the underlying facts of the incident. Alternatively, Johnson asserts the District is estopped to assert the defense of noncompliance. For the reasons which follow, we conclude neither contention has merit and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On February 21, 1986, Johnson was struck and injured by a speeding motorcycle as she was leaving Madison High School while walking across Kessling Street in San Diego. On May 20, she filed claims with the City of San Diego and the State Board of Control. (See Gov. Code, § 910.) The claim filed with the State Board of Control named the District as the responsible entity for failing to safely control or regulate traffic on a busy street students crossed during lunch hour to get to the shopping center. When the State Board of Control did not reply, Johnson filed her complaint for personal injury naming the District as one defendant. She specifically alleged timely presentation of her claim to both the City of San Diego and the State Board of Control.

On July 25, 1988, the trial court granted the District's motion for summary judgment on the basis Johnson had failed to comply with Government Code section 900 et seq., because she had filed her claim with the State Board of Control rather than directly with the District, specifically finding no substantial compliance.

## JOHNSON FAILED TO SUBSTANTIALLY COMPLY WITH THE CLAIM FILING PROVISIONS

 Although Johnson acknowledges the District constitutes a separate entity apart from the Department of Education whose governing board establishes statewide education policy to be implemented by local school districts, she in any event contends the department's role in establishing policies for local districts makes it a de facto governing body of the District. Therefore, she argues her claim with the State Board of Control apprising it she was seeking damages for injuries sustained as a result of the District's negligence was sufficient to alert the Board of Education a claim was being asserted against the District. The flaw in Johnson's reasoning is her characterization of the relationship between the District and the state educational entities within the factual and statutory context of this case.

 The Act is designed to provide a governmental entity with sufficient information to enable it to investigate and timely evaluate the merits of uninsured claims and, where possible, avoid the expense of litigating meritorious claims. (*City of San Jose* v. *Superior Court* (1974) 12 Cal.3d 447, 455 [115 Cal.Rptr. 797, 525 P.2d 701, 76 A.L.R.3d 1223]; *Dilts* v. *Cantua Elementary School Dist.* (1987) 189 Cal.App.3d 27, 32 [234 Cal.Rptr. 612].)

"By requiring advance knowledge of potential claims, the claims statute provides an opportunity to the public entity to quickly rectify a dangerous

condition and further provides an opportunity for the entity to take the potential claim into account in its fiscal planning. [Citation.]" *(San Diego Unified Port Dist.* v. *Superior Court* (1988) 197 Cal.App.3d 843, 847 [243 Cal.Rptr. 163].) Compliance with the claims provisions is mandatory. *(City of San Jose* v. *Superior Court, supra,* 12 Cal.3d at p. 454; *Dilts* v. *Cantua Elementary School Dist., supra,* 189 Cal.App.3d at p. 32; *Pacific Tel. & Tel. Co.* v. *County of Riverside* (1980) 106 Cal.App.3d 183, 188 [165 Cal.Rptr. 29].)[1] ■ However, the claims statutes which are designed to protect governmental agencies from stale and fraudulent claims, provide an opportunity for timely investigation and encourage settling meritorious claims should not be used as traps for the unwary when their underlying purposes have been satisfied. *(Jamison* v. *State of California* (1973) 31 Cal.App.3d 513, 518 [107 Cal.Rptr. 496]; *Elias* v. *San Bernardino County Flood Control Dist.* (1977) 68 Cal.App.3d 70, 74 [135 Cal.Rptr. 621].) Consequently, the courts employ a test of substantial compliance, rather than strict compliance, in determining whether the plaintiff has met the filing requirements of the Act. *(City of San Jose* v. *Superior Court, supra,* 12 Cal.3d at pp. 456-457; *Dilts* v. *Cantua Elementary School Dist., supra* , 189 Cal.App.3d at p. 33; *Pacific Tel. & Tel. Co.* v. *County of Riverside, supra,* 106 Cal.App.3d at p. 188.) In other words, "[w]here there has been an attempt to comply but the compliance is defective, the test of substantial compliance controls. Under this test, the court must ask whether sufficient information is disclosed on the face of the filed claims 'to reasonably enable the public entity to make an adequate investigation of the merits of the claim and to settle it without the expense of a lawsuit.' " *(Loehr* v. *Ventura County Community College Dist.* (1983) 147 Cal.App.3d 1071, 1083 [195 Cal.Rptr. 576], quoting *City of San Jose* v. *Superior Court, supra,* 12 Cal.3d at p. 456; *Pacific Tel. & Tel. Co.* v. *County of Riverside, supra,* 106 Cal.App.3d at p. 188.) In appropriate cases, where the public entity has suffered no prejudice, substantial compliance will be found. *(Elias* v. *Bernardino County Flood Control Dist., supra,* 68 Cal.App.3d at p. 74; *Donohue* v. *State of California* (1986) 178 Cal.App.3d 795, 804 [224 Cal.Rptr. 57].) "So long as the purposes of the claims statute are effectuated, its requirements should be given a liberal construction in order to permit full adjudication of the case on its merits." *(Dilts* v. *Cantua Elementary School Dist., supra,* 189 Cal.App.3d at p. 33; *Minsky* v. *City of Los Angeles* (1974) 11 Cal.3d 113, 123 [113 Cal.Rptr. 102, 520 P.2d 726].)

■ On the other hand, "[t]he doctrine of substantial compliance is not applicable to a claim which is addressed to the wrong *entity. (Jackson* v.

---

[1] "It is well-settled that claims statutes must be satisfied even in face of the public entity's actual knowledge of the circumstances surrounding the claim. Such knowledge—standing alone—constitutes neither substantial compliance nor basis for estoppel." *(City of San Jose* v. *Superior Court, supra,* 12 Cal.3d at p. 455; *Pacific Tel. & Tel. Co.* v. *County of Riverside, supra,* 106 Cal.App.3d at p. 191.)

*Board of Education* [1967] 250 Cal.App.2d 856, 860 [58 Cal.Rptr. 763].)" (*Jamison* v. *State of California, supra,* 31 Cal.App.3d at p. 517.) However, whether this rule applies to specific factual contexts is sometimes obscure. For instance, where the governing body (board of supervisors) of one public entity (county) is also the governing body of another public entity (county flood control district), a claim against one public entity delivered to the governing body of both substantially complies with the filing requirements. (*Elias* v. *San Bernardino County Flood Control Dist., supra,* 68 Cal.App.3d at pp. 75-77.) Moreover, in *Jamison* v. *State of California, supra,* 31 Cal.App.3d 513, the court held service of a timely claim upon an officer in the employ of a public agency allegedly responsible for the injury to be substantial compliance where the officer had a duty to forward the claim to the entity of which he is an officer or employee. In other words, "[b]oth *Elias* and *Jamison* appear to stand for the general proposition that there will be substantial compliance with the claims statute when the claim either is actually received by the proper board or should be received because it was served on a subordinate of the proper board." (*Kaslavage* v. *West Kern County Water Dist.* (1978) 84 Cal.App.3d 529, 538 [148 Cal.Rptr. 729] [where a service of a claim on the County of Kern did not constitute substantial compliance in filing a claim against the West Kern County Water District where the record was devoid of any evidence establishing the members of the respective governing boards were the same].)[2] Accordingly, service of a claim on one public agency, a subordinate agency to the governmental entity allegedly responsible for the injury, is substantial compliance with the filing requirements of the Act.

■ Education and our public schools are plainly matters of statewide concern and in fact state function (*San Francisco Unified School Dist.* v. *Johnson* (1971) 3 Cal.3d 937, 951 [92 Cal.Rptr. 309, 479 P.2d 669]; *Hall* v. *City of Taft* (1956) 47 Cal.2d 177, 179 [302 P.2d 574]), an obligation the state assumed through the adoption of the constitution (*San Francisco Unified School Dist.* v. *Johnson, supra,* 3 Cal.3d at p. 952; *Piper* v. *Bia Pine School Dist.* (1924) 193 Cal. 664, 669 [226 P. 926]). To perform this obligation, the state has established subordinate local school districts whose governing board function as agents of the state. (*San Francisco Unified School Dist.* v. *Johnson, supra,* 3 Cal.3d at p. 952; *Hall* v. *City of Taft, supra,* 47 Cal.2d at p. 181.) "However, the fact that a state agency is created by

---

[2] Similarly, in *Jackson* v. *Board of Education* (1967) 250 Cal.App.2d 856, 858-859 [58 Cal.Rptr. 763], the court held the filing of a claim with the City of Los Angeles for damages arising from the death of Jackson's son by drowning while on a student beach party did not constitute substantial compliance with the statutory claim-filing requirements so as to enable Jackson to sue the Los Angeles City Board of Education, because in part the school district and not the city would be liable for any judgment by statute and the claim was filed with the city clerk who was not a subordinate officer of the board of education.

statute to discharge a duty constitutionally imposed on the state does not transmute the agency into 'the state,' nor render the state liable for its acts under a general theory of respondeat superior. [Citations.]" (*First Interstate Bank* v. *State of California* (1987) 197 Cal.App.3d 627, 633 [243 Cal.Rptr. 8].) "State agencies, even though exercising a portion of the state's powers of government, are not the state or a part of the state [citation]; and may not act on behalf of the state unless authorized to do so by statute [citation]. School districts, by statutory provision, act through school boards and the authority of the districts is measured by the authority statutorily conferred upon the boards." (*Gonzales* v. *State of California* (1972) 29 Cal.App.3d 585, 590 [105 Cal.Rptr. 804]; see *First Interstate Bank* v. *State of California*, *supra*, 197 Cal.App.3d at pp. 633-634.) The constitutional and derivative statutory scheme governing education in California does not intend to impose upon the state the duty to supervise schoolchildren attending schools operated by school districts, but rather to discharge the broad responsibilities of the state in educating its children through state agencies which are separate and distinct public entities. "There is no statute imposing liability on the state for the torts of such separate public entities." (*Gonzales* v. *State of California*, *supra*, 29 Cal.App.3d at p. 592.)

The separate distinct character of the school district as distinguished from the state educational entities is made clear by the statutory provisions requiring the governing board of any school district to purchase liability insurance (Ed. Code,[3] § 35208), to be liable for debts and contracts (§ 35200), to pay judgments (former § 35201), to be aided by the district attorney or county counsel (§ 35203), to contract with private counsel (§ 35204) or for legal services (§ 35205), etc.[4] Its separate distinct character withstands application of the Act (Gov. Code, § 900 et seq.), which governs all claims for money or damages against the school district. (§ 35202.) Under the Act's claim-filing requirements, "local public entity" is defined as "a county, city, district, public authority, public agency, and any other political subdivision or public corporation in the State, but does not include the State." (Gov. Code, § 900.4.) " 'State' means the State and any office, officer, department, division, bureau, board, commission or agency of the State claims against which are paid—by warrants drawn by the Controller." (Gov. Code, § 900.6) ▮ Although a school district constitutes a "state agency" as explained above, it is a "local public entity" under the claim-filing requirements of the Act because it is not a state agency claims against which are paid by warrants issued by the controller. (See *First Interstate Bank* v. *State of California*, *supra*, 197 Cal.App.3d at p. 633; *Loehr* v.

---

[3] All statutory references are to the Education Code unless otherwise specified.

[4] Needless to say, the Education Code provides that the governing board of a school district may, in the name of the district, sue and be sued. (§ 35162.) Moreover, Government Code section 945 provides that "[a] public entity may sue and be sued."

*Ventura County Community College Dist., supra*, 147 Cal.App.3d at pp. 1078-1084.)[5] It is without dispute here that potential liability rests not with the state, but the school district.

Granted, "[t]he doctrine of substantial compliance requires no more than that the governmental entity be apprised of the claim, have an opportunity to investigate and settle it and incur no prejudice as a result of plaintiff's failure to strictly comply with the claims act." (*Elias* v. *San Bernardino County Flood Control Dist., supra*, 68 Cal.App.3d at p. 75.) However, the adoption here of Johnson's assertion she substantially complied with the claim-filing requirements by filing her claim with the State Board of Control would undermine, if not defeat, the purposes underlying the Act. Preliminarily, such a holding would promote the filing of all claims with the State Board of Control, contrary to the express provisions of the Act requiring filing with the allegedly responsible local public entity. Secondly, it does not follow that notice of the claim routinely would be forwarded to the District after filing with the State Board of Control, which could be expected to review it and simply determine the absence of any potential liability of the state or any of its departments or agencies. The case here is distinguishable from both *Elias* and *Jamison* because service upon the State Board of Control does not constitute receipt by the proper board ultimately responsible or a subordinate of the governmental entity ultimately liable. To conclude otherwise would result in the shifting of the responsibility of filing a claim with the proper public entity from the claimant to the State Board of Control.

### THERE EXIST NO TRIABLE ISSUES OF FACT REGARDING ESTOPPEL

Johnson alternatively contends the District is estopped from asserting the defense of noncompliance with the filing requirements of the Act, because the State Board of Control made no effort to inform her it was not the proper agency for service, lulling her into default while time for compliance still remained.

A public entity may be estopped from asserting noncompliance with the claims statutes where its agents or employees prevented or deterred the filing of a timely claim by some affirmative conduct. (*John R.* v. *Oakland Unified School Dist.* (1989) 48 Cal.3d 438, 445 [256 Cal.Rptr. 766, 769 P.2d 948].) Estoppel as a bar to a public entity's assertion of the defense of noncompliance arises when the plaintiff can establish: (1) the public entity

---

[5] Moreover, the Legislature has impliedly treated the school district as a "local public entity" by enacting Government Code sections 970-971.2 governing the payment of judgments against local public entities and later repealing as superseded former section 35201 regarding the payment of judgments by school districts (Stats. 1980, ch. 215, § 2, p. 449).

was apprised of the facts; (2) it intended its conduct to be acted upon or must have conducted itself in a fashion the plaintiff had a right to believe it was so intended; (3) plaintiff was ignorant of the true state of facts; and (4) plaintiff relied upon the conduct of the public entity to his/her detriment. (*Driscoll* v. *City of Los Angeles* (1967) 67 Cal.2d 297, 305 [61 Cal.Rptr. 661, 431 P.2d 245]; *DeYoung* v. *Del Mar Thoroughbred Club* (1984) 159 Cal.App.3d 858, 862 [206 Cal.Rptr. 28]; *Nicholson-Brown, Inc.* v. *City of San Jose* (1976) 62 Cal.App.3d 526, 531 [133 Cal.Rptr. 159]; Miller, Cal. Government Tort Liability Practice (Cont.Ed.Bar Supp. 1989) § 5.47, Estoppel, p. 136.) Although the existence of estoppel is generally a question of fact, "[w]hen the evidence is not in conflict and is susceptible of only one reasonable inference, the existence of an estoppel is a question of law." (*Driscoll* v. *City of Los Angeles, supra*, 67 Cal.2d at p. 305; *Stromberg, Inc.* v. *L.A. County Flood etc. Dist.* (1969) 270 Cal.App.2d 759, 767-768 [76 Cal.Rptr. 183].)

■■■ This record contains no justification for applying the doctrine of equitable estoppel. Johnson seeks to do so, not because of the District's conduct, but that of the State Board of Control. Her argument fails because she cannot establish an agency relationship between the state and District within the context of civil liability arising from the negligent supervision of its students or maintenance of its school properties. (See *Calabrese* v. *County of Monterey* (1967) 251 Cal.App.2d 131, 139-140 [59 Cal.Rptr. 224].)

DISPOSITION

The judgment is affirmed.

Wiener, Acting P. J., and Todd, J., concurred.